Mark S. Bostick (Bar No. 111241)
Tracy Green (Bar No. 114876)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com
Email: tgreen@wendel.com

Attorneys for Plaintiff,
Michael G. Kasolas, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FIFTH STREET LOFTS, LLC,<br><br>Debtor. | Case No. 17-42303-RLE<br><br>Chapter 7 |
| MICHAEL G. KASOLAS, Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>ASANITOURE, LLC, SAXLAND PARTNERS, LLC, 1550 PARK LLC, 2336 MAGNOLIA, LLC, AMANDA KOBLER and YUSUFU QUANTI BOMANI,<br><br>Defendants. | Adv. Proc. No._____<br><br>**COMPLAINT TO AVOID FRAUDULENT TRANSFERS, BREACH OF FIDUCIARY DUTY, CONVERSION AND CONSTRUCTIVE TRUST** |

Plaintiff Michael G. Kasolas ("Plaintiff" or "Trustee"), trustee of the chapter 7 bankruptcy estate of Fifth Street Lofts, LLC ("Debtor"), alleges as follows:

**JURISDICTION AND VENUE**

1. The above-captioned Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (H), which seeks relief under 11 U.S.C. §§ 502, 544(b), 548 and 550 and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

4. Plaintiff consents to the entry of a final order by the Bankruptcy Court.

## GENERAL ALLEGATIONS

5. Fifth Street Lofts, LLC ("Debtor") commenced this Bankruptcy case on September 13, 2017, when Fifth Street Lofts, LLC filed a chapter 7 petition in bankruptcy in the Northern District of California, Oakland Division, Case No. 17-42303 ("Petition Date").

6. Michael G. Kasolas was appointed the Chapter 7 trustee in bankruptcy.

7. Plaintiff is informed and believes that Amanda Kobler ("Kobler") is an Alameda County resident and is the managing member of Fifth Street Lofts, LLC ("Debtor" or "Fifth Street").

8. Plaintiff is informed and believes that Yusufu Quanti Bomani ("Bomani") is a resident of Contra Costa County and is a member of Fifth Street Lofts.

9. Plaintiff is informed and believes that Defendant Asanitoure is not an entity that is registered with the State of California, but Amanda Kobler testified she was the managing member.

10. Plaintiff is informed and believes that Defendant Saxland Partners was a California limited liability company whose managing member was Amanda Kobler, and which entity was canceled on March 17, 2014. Therefore, at all relevant times in this Complaint, Saxland Partners operated as Kobler and/or Bomani.

11. Plaintiff is informed and believes that Defendant 1550 Park, LLC ("Park") is not a registered limited liability company.

12. Plaintiff is informed and believes that Defendant 2336 Magnolia, LLC ("Magnolia") is a Delaware limited liability company whose managing member is Amanda Kobler.

///

13. Kobler is the Debtor's representative and testified at the 341 hearings held on October 25, 2017, and November 15, 2017 (collectively "341 Hearings"). Kobler testified at the 2004 Examination of the Debtor conducted on February 9, 2018 ("2004 Examination").

## BACKGROUND

14. One of the assets in the bankruptcy case was a warehouse in Oakland that the Debtor purportedly intended to convert to condominiums located at 377 and 381 5th Street, Oakland, California ("Property).

15. Plaintiff sold the Property after this case was commenced for the sum of $3,265,000, and netted approximately $1.2 million in unencumbered funds for the estate.

16. The Schedules and Statement of Financial Affairs was filed with the Petition on September 13, 2017 ("Bankruptcy Schedules") state that the Debtor's equity holders include Kobler and Bomani.

17. Plaintiff is informed and believes that Saxland Partners entered into a Purchase Agreement to purchase the Property from Diane Mighetto, Trustee, for the sum of $2,600,000, and subsequently assigned its interest in the Purchase Agreement to Fifth Street Lofts. A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit A**. The sale closed on or about June 26, 2015, and the Grant Deed executed in January 2015, was recorded in June of 2015. A true and correct copy of the Grant Deed is attached hereto as **Exhibit B**.

18. Plaintiff is informed and believes that Kobler obtained two investments related to the purchase and development of the Property. Plaintiff is informed and believes that in January 2015, Fifth Street Lofts obtained a $1.7 million investment from Jeffrey W.T. Mark ("Mark") and Li Wen Bu ("Bu"). In February 2016, Fifth Street Lofts obtained $1 million from Justin Hu ("Hu").

19. Plaintiff is informed and believes that the Property included a billboard which was the subject of a lucrative lease with Clear Channel that rented for approximately $7,300 a month with rent payments increased over time. A true and correct copy of the billboard lease is attached hereto as **Exhibit C** ("Billboard Lease"). The Billboard Lease expires in 2034; and called for future lease payments in the sum of approximately $2.3-$3.4 million.

20. Fifth Street Lofts was the successor-in-interest on the Billboard Lease. Plaintiff is informed and believes that Fifth Street Lofts received the monthly payments from the Billboard Lease and the revenue sharing fees by way of checks made payable to Fifth Street Lofts, and which checks were endorsed for deposit to the payee Fifth Street Lofts ("Billboard Lease Payments"), and some, but not all, monthly rent checks were deposited into the Fifth Street Lofts bank account.

21. Plaintiff is informed and believes that Kobler deposited some Billboard Lease Payments into other entities controlled by Kobler and/or Bomani, such as Magnolia or Park.

22. Kobler testified at the 341 Hearings and 2004 Examination that the seller of the Property retained the rights to the billboard. The Billboard Lease Payments were sent to Fifth Street Lofts by Clear Channel, endorsed for deposit into Fifth Street Lofts' bank account, and most were deposited into the Fifth Street Lofts bank accounts.

23. Plaintiff is informed and believes that Kobler instructed Clear Channel to change the payee from Dianne Mighetto to Fifth Street Lofts after escrow closed.

24. Plaintiff is informed and believes that Kobler contacted Clear Channel and inquired as to the payment history before Fifth Street Lofts bought the property, because she advised them that she wanted to use the Billboard as collateral for a loan in the sum of $2.1 million.

25. Kobler testified at her 2004 Examination and/or the 341 Hearings that she wanted to borrow against the Billboard Lease, because she was trying to raise funds to repay Fifth Street Lofts' investors Mark and Bu.

26. Plaintiff is informed and believes that on behalf of the Debtor, on November 9, 2016, Kobler assigned Fifth Street Loft's interest in the Billboard Lease to another entity controlled by Kobler, Asanitoure, for no consideration. A true and correct copy of the Assignment and Assumption of Lease Agreement is attached hereto as **Exhibit D** ("Billboard Lease Transfer"). A true and correct copy of the Easement related to the Billboard is attached hereto as **Exhibit E**.

/ / /

27. Plaintiff is informed and believes that Kobler testified at her 2004 examination that Asanitoure was a shell company established as a vehicle by an attorney to transfer the Billboard Lease out of the Debtor, and Asanitoure did not pay any consideration.

28. Plaintiff is informed and believes that on or about November 21, 2016, Asanitoure sold its interest in the Billboard to Landmark Infrastructure Operating Company, LLC ("Landmark") for $1,450,000 ("Billboard Sale Proceeds"). Attached hereto as **Exhibit F** is a true and correct copy of the Assignment and Assumption of Easement and Assignment and Assumption of Lease Agreement.

29. The Plaintiff is informed and believes that on November 21, 2016 Landmark wire transferred the Billboard Sale Proceeds in the sum of $1,439,050, into Saxland Partners bank account. Attached hereto as **Exhibit G** is a true and correct copy of a Saxland Partners' Wells Fargo Bank statement showing the wire transfer from Landmark into Saxland Partners bank account.

30. Plaintiff is informed and believes that on November 22, 2016 Saxland Partners transferred the sum of $1,423,900 ("Billboard Proceeds Transfer") to a notary in Saint Maarten to "Purchase Eden Rock- Kobler" according to a notation on the wire transfer. Attached hereto as **Exhibit H** is a true and correct copy of the Wells Fargo Bank wire instructions.

31. Plaintiff is informed and believes that Saxland Partners took control and dominion over the Billboard Sale Proceeds that belonged to Fifth Street Lofts by the Billboard Proceeds Transfer and effectively transferred those proceeds directly to Kobler and Bomani for the purchase of real property.

32. Plaintiff is informed and believes that Defendants Kobler and Bomani used the Billboard Sale Proceeds to purchase real property in Saint Maarten identified as SXM UPQ 276/2004, and further described as part of the subdivision of Red Pond Estates ("Red Pond Property"). A true and correct copy of a report from the office of land registry in Saint Maarten is attached hereto as **Exhibit I**, reflecting that Red Pond Property was purchased on November 25, 2016.

///

33. Plaintiff is informed and believes that Kobler and/or Bomani made numerous cash withdrawals from Fifth Street Lofts in the sum of at least $600,000, for which is no evidence that the proceeds were used in connection with Fifth Street Loft's operations or business ("Cash Transfers").

34. Plaintiff is informed and believes that Kobler and/or Bomani made numerous intercompany transfers, transferring Fifth Street Lofts' funds into the bank accounts of two other entities controlled by Kobler and/or Bomani.

35. Plaintiff is informed and believes that from January 2015 through December 2016, Fifth Street Lofts transferred the sum of at least $560,000.00 to Magnolia, an entity controlled by Kobler and/or Bomani, for no consideration ("Magnolia Transfers").

36. Plaintiff is informed and believes that from January 2015 through December 2016, Fifth Street Lofts transferred the sum of at least $140,660.00 to Park, an entity not registered in the State of California controlled by Kobler and/or Bomani, for no consideration ("Park Transfers").

37. Plaintiff is informed and believes that Magnolia and Park transferred funds between themselves, including the funds that belonged to Fifth Street Lofts.

38. Plaintiff is informed and believes that on March 30, 2017, Magnolia transferred the sums of $80,000 and $526,638.30 to a Notary in Saint Maarten for the purpose of buying real property in the name of Kobler and Bomani ("Magnolia Saint Maarten Transfers"). Attached hereto as **Exhibit J** is a true and correct copy of a Magnolia bank statement reflecting that Magnolia transferred the sums set forth herein to a Saint Maarten notary.

39. Attached hereto as **Exhibit K** is a true and correct copy of a report from the land registry office in Saint Maarten reflecting that on April 4, 2017, Defendants Bomani and Kobler purchased real property identified as SXM UPQ 038/2004 and further described as Gibb's Land ("Gibb's Land") for the sum of $500,000.

40. Plaintiff is informed and believes that in addition to purchasing real property, Kobler and Bomani used the funds in the bank accounts of Magnolia, Park and Fifth Street Lofts for their own personal expenses for items unrelated to the operations or businesses of those entities, including and primarily funds that were the property of Fifth Street Lofts.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

41. Defendants were the initial, mediate or immediate transferees of all the Transfers set forth herein for purposes of 11 U.S.C. §550(a)(1) because they had dominion and control of the transferred funds.

### FIRST CLAIM FOR RELIEF
### Asanitoure, Kobler, Bomani
### (Claim to Avoid Fraudulent Transfers Under § 548)

42. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

43. On November 9, 2016, the Debtor transferred the Billboard Lease to Asanitoure for no consideration ("Billboard Lease Transfer").

44. The Billboard Lease Transfer was made within two years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's creditors.

45. The Billboard Lease Transfer was made within two years of the Petition Date for less than a reasonably equivalent value in exchange for such Billboard Lease Transfer; and on the date that such Billboard Lease Transfer was made, the Debtor was or became insolvent as a result of such Billboard Lease Transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or the Debtor made such Transfer to or for the benefit of an insider.

46. Pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B), Plaintiff may avoid the Billboard Lease Transfer.

47. Defendants Kobler, and Bomani are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1).

48. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### SECOND CLAIM FOR RELIEF
### Saxland Partners, Kobler, Bomani
### (Claim to Avoid Fraudulent Transfers Under § 548)

49. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

///

///

50. Landmark purchased Fifth Street Loft's Billboard Lease that had been transferred to Asanitoure, and Landmark paid Saxland Partners instead of the Debtor by wire transfer in the sum of $1,450,000.

51. Plaintiff is informed and believes that Saxland Partners, a limited liability company that was canceled at the time, paid no consideration for the Landmark Transfer.

52. Plaintiff is informed and believes that Kobler provided Landmark with wire transfer instructions which diverted the payment into a Saxland Partners bank account ("Landmark Transfer") and not to Fifth Street Lofts' bank account.

53. Saxland Partners, Kobler and/or Bomani received the Landmark Transfer, and maintained control and dominion over the Landmark Transfer until the proceeds were transferred for Kobler and Bomani's benefit to purchase the Red Pond Property.

54. The Landmark Transfer was made within two years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's creditors.

55. The Landmark Transfer was made within two years of the Petition Date for less than a reasonably equivalent value in exchange for such Landmark Transfer; and on the date that such Landmark Transfer was made, the Debtor was or became insolvent as a result of such Landmark Transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or the Debtor made such transfer to or for the benefit of an insider.

56. Pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B), Plaintiff may avoid the Landmark Transfer.

57. Defendants Kobler, and Bomani are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1).

58. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/ / /

/ / /

### THIRD CLAIM FOR RELIEF
### Park, Magnolia, Kobler, Bomani
### (Claim to Avoid Fraudulent Transfers under § 548)

59. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

60. Plaintiff is informed and believes that Kobler and Bomani transferred funds, which belonged to Fifth Street Lofts to Park and Magnolia, and all or part of those funds were used to purchase Gibb's Land in Saint Maarten for Kobler and Bomani ("Magnolia Saint Maarten Transfers").

61. The Magnolia Saint Maarten Transfers were made within two years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's creditors.

62. The Magnolia Saint Maarten Transfers were made within two years of the Petition Date for less than a reasonably equivalent value in exchange for such Magnolia Saint Maarten Transfers; and on the date that such transfers were made, the Debtor was or became insolvent as a result of such transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or the Debtor made such transfers to or for the benefit of an insider.

63. Pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B), the Trustee may avoid the Transfers.

64. Defendants Park, Magnolia, Kobler, and Bomani are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1).

65. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF
### Amanda Kobler and Yusufu Quanti Bomani
### (Claim to Avoid Fraudulent Transfers under § 548)

66. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

67. Plaintiff is informed and believes that Kobler and Bomani made cash withdrawals from the Debtor ("Cash Transfers") for their own personal use in the sum of at least $600,000, and for no consideration.

68. The Cash Transfers were made within two years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's creditors.

69. The Cash Transfers were made within two years of the Petition Date for less than a reasonably equivalent value in exchange for such Cash Transfers; and on the date that such Cash Transfers were made, the Debtor was or became insolvent as a result of such Cash Transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or the Debtor made such Transfers to or for the benefit of an insider.

70. Pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B), the Trustee may avoid the Transfers.

71. Defendants Kobler and Bomani are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1).

72. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### FIFTH CLAIM FOR RELIEF
### Amanda Kobler and Yusufu Quanti Bomani
### (Claim to Avoid Fraudulent Transfers under § 548)

73. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

74. Plaintiff is informed and believes that Kobler and Bomani used debit cards associated with Fifth Street bank accounts for personal expenses in the sum of at least $100,000, without consideration, and debit cards associated with the Park and Magnolia bank accounts that contained Debtor's funds in an amount to be determined at trial ("Debit Card Transfers").

75. Debit Card Transfers were made within two years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's creditors.

76. The Debit Card Transfers were made within two years of the Petition Date for less than a reasonably equivalent value in exchange for such Debit Card Transfers; and on the date that such Debit Card Transfers were made, the Debtor was or became insolvent as a result of such Debit Card Transfers; the Debtor was engaged in business or a transaction, or was about to engage

in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or the Debtor made such Transfers to or for the benefit of an insider.

77. Pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B), the Trustee may avoid the Transfers.

78. Defendants Kobler and Bomani are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1).

79. WHEREFORE, the Plaintiff prays for judgment as hereinafter set forth.

### SIXTH CLAIM FOR RELIEF
**Amanda Kobler and Yusufu Quanti Bomani**
**(Breach of Fiduciary Duty)**

80. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

81. Kobler and Bomani owed a fiduciary duty to the creditors of this estate.

82. Kobler and Bomani breached their fiduciary duties by using the Billboard Sale Proceeds to purchase the Red Pond Property; for withdrawing large sums of cash for their own personal expenses unrelated to Fifth Street Lofts; for using the Fifth Street Loft's debit cards for their own personal use, for transferring property that belonged to Fifth Street Lofts to Park and Magnolia, and causing Magnolia to transfer proceeds to a Notary in Saint Maarten for the purpose of buying Gibbs Land for their own use.

83. As a direct and proximate cause of Kobler and Bomani's breach, the creditors of this estate were damaged in an amount to be determined according to proof, but in any event at least the sum of $2,500,000.

84. Kobler and Bomani intentionally breached their fiduciary duties with malice and fraud, including, but not limited to Kobler's false testimony at the 341 Hearings and 2004 Examination in which she testified that neither she nor Fifth Street Lofts received any of the Lease Payments, Billboard Sale Proceeds, or any other distributions from the Debtor, and providing the Trustee with falsified accounting records.

///

85. The aforementioned conduct of Defendants included false statements, deceit and concealment of material facts known to Defendants with the intention of depriving creditors of their property and rights so as to justify an award in Plaintiff's punitive damages.

86. Kobler and Bomani provided the Trustee with falsified accounting records to hide the intercompany transfers and cash withdrawals.

87. Plaintiff is therefore entitled to punitive damages.

88. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF
**Amanda Kobler and Yusufu Quanti Bomani**
**(Conversion)**

89. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

90. Kobler and Bomani are not entitled to the use and benefit of the Fifth Street Lofts assets, including, but not limited to, Lease Payments, Billboard Sale Proceeds, Magnolia Transfers, Park Transfers, Red Pond Property, Magnolia Saint Maarten Transfer, Gibb's Land, Debit Transfers and Cash Transfers.

91. Plaintiff is informed and believes that Kobler and Bomani interfered with the Debtor's use of the funds set forth above by failing to deposit all of the Lease Payments and the Billboard Proceeds in the Debtor's Bank Account, by transferring the Billboard to Asanitoure without consideration, by usurping the Billboard Sale Proceeds to purchase real property in their own name, by making large cash withdrawals, using the debit cards for their own use, and transferring proceeds to Magnolia and Park for no consideration, purchasing Red Pond Property and Gibb's Land for Kobler and Bomani.

92. The Debtor's creditors did not consent to Kobler and Bomani's personal use of estate assets as set forth hereinabove, and the estate was harmed as a direct result of Kobler and Bomani's conduct.

93. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/ / /

/ / /

/ / /

COMPLAINT TO AVOID FRAUDULENT TRANSFERS   12
Case: 17-42503   Doc# 35   Filed: 12/13/18   Entered: 12/13/18 15:16:42   Page 12 of 14
017558.0066\5272093

## EIGHTH CLAIM FOR RELIEF
### Amanda Kobler and Yusufu Quanti Bomani
### (Constructive Trust, California Civil Code §§ 2223 and 2224)

94. Plaintiff realleges the forgoing paragraphs as though fully set forth herein.

95. Plaintiff is informed and believes as a result of Defendants Breach of Fiduciary Duty and Fraud set forth hereinabove, Plaintiff is entitled to a Constructive Trust on the proceeds in their control and the real property located in Saint Maarten known as Red Pond Property and Gibb's Land, and any other real property Plaintiff discovers that was purchased with assets which belong to Fifth Street Lofts.

96. WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

Plaintiff prays for judgment:

1. On Plaintiff's First Claim for Relief for judgment avoiding the Billboard Lease Transfer pursuant to Bankruptcy Code § 548;

2. On Plaintiff's Second Claim for Relief for judgment avoiding the Landmark Transfer pursuant to Bankruptcy Code Section 548;

3. On Plaintiff's Third Claim for Relief for judgment avoiding the Magnolia Saint Maarten Transfer;

4. On Plaintiff's Fourth Claim for Relief for judgment avoiding the Cash Transfers in the sum of $600,000, or in an amount as proven at trial;

5. On Plaintiff's Fifth Claim for Relief for judgment avoiding the Debit Card Transfer in the amount of $100,000, or such additional amount proven at trial;

6. On Plaintiff's Sixth Claim for Relief for judgment in the sum of $2,500,000 for breach of fiduciary duty, or such additional amount proven at trial;

7. On Plaintiff's Seventh Claim for Relief for judgment in the sum of $2,500,000 or such additional amounts as may be proven at trial for conversion;

8. On Plaintiff's Eighth Claim for Relief for Constructive Trust on the Red Pond Property, Gibb's Land, and such other property which is property of this estate.

/ / /

9. On all claims for relief for judgment determining that Defendants are the initial, mediate or immediate transferee under 11 U.S.C. § 550(a)(1) and granting recovery against Defendants;

10. On all claims for relief awarding pre-judgment interest at the legal rate under law from the date of each Transfer set forth herein;

11. For Punitive Damages;

12. For costs of suit; and

13. For such other relief as the Court deems proper.

DATED: December 13, 2018					WENDEL, ROSEN, BLACK & DEAN LLP


							By:	*/s/ Tracy Green*
								Tracy Green
								Attorneys for Plaintiff,
								Michael G. Kasolas, Trustee